Argued and submitted September 19, reversed October 27, 1980

In the Matter of the Compensation of

# WILSON,
*Petitioner,*

*v.*

# STATE ACCIDENT INSURANCE FUND,
*Respondent.*

(No. 79-3072, CA 17842)

618 P2d 473

Kenneth D. Peterson, Jr., Eugene, argued the cause for petitioner. On the brief were Evohl F. Malagon and Malagon & Yates, Eugene.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund, Salem, argued the cause for respondent. With him on the brief were K. R. Maloney, General Counsel and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is a Workers' Compensation case in which the sole issue is the legal authority of the respondent State Accident Insurance Fund (SAIF) to recover an overpayment of $2,868.49 which it had made to claimant. Both the referee and the Workers' Compensation Board (Board) found that the manner in which SAIF recovered the overpayment by deducting it from a permanent partial disability award to claimant was proper. Claimant appeals. We disagree with the referee and Board, and therefore reverse.

We draw our statement of facts in the main from the opinion of the referee. Claimant had two separate Workers' Compensation claims, the first being against Green Valley Lumber in July, 1973. Green Valley was insured by EBI, a private insurance carrier. Claimant's second claim was in May, 1976, against Southern Logging Company. Southern Logging Company is insured by SAIF.

In 1977, claimant needed further medical care and therefore filed an aggravation claim with both carriers. Both carriers denied responsibility. On March 24, 1977, EBI was designated as a paying agent pursuant to ORS 656.307.[1]

---

[1] ORS 656.307 provides:

"(1) Where there is an issue regarding:

"(a) Which of several subject employers is the true employer of a claimant worker;

"(b) Which of more than one insurer of a certain employer is responsible for payment of compensation to a worker;

"(c) Responsibility between two or more employers or their insurers involving payment of compensation for two or more accidental injuries; or

"(d) Joint employment by two or more employers,

"the director shall, by order, designate who shall pay the claim, if the claim is otherwise compensable. Payments shall begin in any event as provided in subsection (4) of ORS 656.262. When a determination of the responsible paying party has been made, the director shall direct any necessary monetary adjustment between the parties involved. Any failure to obtain reimbursement from an insurer or self-insured employer shall be recovered from the Administrative Fund

Following a hearing before the referee, an opinion and order was issued on November 3, 1977, which held SAIF responsible. EBI then requested repayment for the monies that they had advanced under ORS 656.307. SAIF repaid EBI $2,868.49. In the meantime, however, SAIF had also been paying compensation and some of claimant's medical bills, resulting in an overpayment in the same amount.

A determination order awarded claimant 10 percent unscheduled disability. After an appeal, the award was increased to 55 percent permanent partial disability. This award represented a dollar amount of $7,840. SAIF, in making payments thereafter pursuant to the award, deducted the $2,868.49.

In determining that the offset which SAIF took was permissible, the referee, the Board and, now, SAIF, rely on ORS 656.268(3), which provides:

"(3) Within 30 days after the Evaluation Division receives the medical and vocational reports relating to a disabling injury, the claim shall be examined and further compensation, including permanent disability award, if any, determined under the director's supervision. If necessary the Evaluation Division may require additional medical or other information with respect to the claim, and may postpone the determination for not more than 60 additional days. *Any determination under this subsection may include necessary adjustments in compensation paid or payable prior to the determination, including disallowance of permanent disability payments prematurely made, crediting temporary disability payments against permanent disability awards and payment of temporary disability payments which were payable but not paid.* The Evaluation Division shall reconsider determinations made pursuant to this subsection whenever one of the parties makes request therefor

---

"(2) No self-insured employer or an insurer shall be joined in any proceeding under this section regarding its responsibility for any claim subject to ORS 656.273 unless the issue is entitled to hearing on application of the worker.

"(3) The claimant shall be joined in any proceedings under this section as a necessary party but may elect to be treated as a nominal party."

and presents medical information regarding the claim that was not available at the time the original determination was made. However, any such request for reconsideration must be made prior to the time a request for hearing is made pursuant to ORS 656.283. The time from request for reconsideration until decision on reconsideration shall not be counted in any limitation on the time allowed for requesting a hearing pursuant to ORS 656.283." (Emphasis supplied).

SAIF acknowledges that this statute does not specifically authorize a deduction to be made after the closing and evaluation level, but it insists that, by analogy, such an offset must be permissible under the statutory scheme as a whole. Claimant does not dispute the idea that SAIF may have been entitled to an offset. He merely contends that SAIF was not entitled to take the offsetting action without receiving prior approval.

Because of the posture taken by the parties, we are not called upon to decide whether an authorization such as that described in ORS 656.307 could be obtained (where requested) at either the referee or Board level. For the purposes of this opinion, we shall assume that it could.

The situation with which we are confronted is one in which there are competing policy considerations. On the one hand, there is a patent unfairness in permitting the claimant to retain over $2,800 to which he was not entitled. On the other hand, there is the desirability of maintaining an orderly compensation process, wherein not only amounts of awards but also any deductions to be made from those awards are established by an appropriate action by the Board or its representative, rather than by the unilateral decision of a workers' compensation carrier.

This court has twice before faced somewhat analogous problems. In *Horn v. Timber Products, Inc.,* 12 Or App 365, 504 P2d 1059 (1973), claimant had received a permanent disability award which was paid in monthly installments. Subsequently, the claimant sustained an aggravation which was eventually found

to be compensable. Temporary disabililty benefits in connection with the aggravation claim were awarded retroactive to a certain date, thereby overlapping to some extent that period for which claimant was paid permanent disability benefits. The carrier refused to pay the temporary disability benefits for the same period for which it had already paid permanent disability benefits. The carrier took this action on its own without first receiving authorization from the Board. This court held this unilateral action to be improper, stating that, if the carrier had wished to raise the question of overpayment or entitlement to a credit, it should have raised this issue at the hearing on the aggravation claim. *Id.,* at 369. We reaffirmed the *Horn* approach in *Taylor v. SAIF,* 40 Or 437, 440, 595 P2d 515 (1979), a case which involved a similar factual issue. In *Taylor,* we also ordered an award of penalty in attorney's fees for the unreasonable refusal on the part of the carrier to pay benefits. We do not do so here because, unlike *Taylor,* this is not a case in which the failure to pay money to which claimant was entitled can fairly be said to have been "unreasonable."

We conclude that the principle established by *Horn* and *Taylor* should be followed here. A policy of requiring the carrier to raise a claim of offset as provided in ORS 656.268(3) will encourage the parties to litigate all of the issues at a single hearing, rather than creating new issues and a necessity for further hearings at a time after a final award of compensation has been determined. Accordingly, the order of the Workers' Compensation Board is reversed.[2]

---

[2] Because of the disposition we make of this case, we are not required to discuss the fact that, out of the $2,868.49 deducted from the claimant's permanent partial disability award, $75.55 represented *medical* payments, which may not have been deductible in any event.